628 So.2d 1254 (1993)
Jimmy BELGARD D/B/A Belgard Construction Company, Plaintiff-Appellant,
v.
Myrtle Ann COLLINS, Defendant-Appellee.
No. 93-489.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*1255 Gregory R. Aymond, Alexandria, for Jimmy Belgard d/b/a Belgard Const. Co.
Virgil Russell Purvis Jr., Jonesville, for Myrtle Ann Collins.
Before DOUCET, YELVERTON and WOODARD, Judges.
WOODARD, Judge.
This appeal arises out of a lawsuit for damages for the alleged breach of an oral contract. The issue on appeal is whether plaintiff, Jimmy Belgard, and defendant, Myrtle Ann Collins, entered into an oral contract.

FACTS
Mrs. Collins and her mother are co-owners of a convenience store in Jonesville, La. The store was damaged in November, 1987 when a tornado or wind storm blew through the area. The building was insured by Allstate Insurance Company. Mrs. Collins' husband was employed by Allstate as a company representative.
Sometime after the store was damaged, Mr. Belgard visited Mrs. Collins at the store. It is at this point that each party's description of events begins to differ; thus, we will present both versions of the facts, beginning with Mr. Belgard's.

MR. BELGARD
Mr. Belgard claims that he stopped at Mrs. Collins' store to tell her he was in the *1256 consulting business and to offer her his services. These services consisted of providing an engineer to inspect the damage to her building and to look for any damage the insurance company might miss. He would also provide the engineer as an expert witness and pay any attorney's fees should litigation become necessary. Mr. Belgard's fee for these services was 25% of any amount collected from the insurance company in excess of the amount of the first check the insurance company sent Mrs. Collins. Mrs. Collins had not received any money from Allstate at this point.
Sometime after this meeting, Mrs. Collins called Mr. Belgard to tell him the insurance company was sending an engineer to her store to inspect the damage. Mr. Belgard claims he and Mr. Philip York, an estimator for Belgard Construction, were present while the insurance company's engineer looked over the building. The purpose of the engineer's investigation was to determine whether the building was repairable. At this time, Mr. Belgard told Mrs. Collins that he knew an engineer and asked if she would like him to bring him by to inspect her store. She said yes.
Thus, Mr. Belgard returned to the store with Mr. Philip Beard, an engineer. Mr. Beard inspected the building and issued a report dated December 16, 1987, discussing the damage to the building. On December 28, 1987, Mr. Belgard and Mr. York presented a package of information to Mrs. Collins which contained a drawing and photographs of her building, the engineer's report, and three bids for the construction work. Allstate required that three bids be submitted for the repair work. Mr. Belgard had obtained two other bids to submit to the insurance company in addition to his own. Mrs. Collins reviewed this package of information and asked Mr. Belgard to drop it off at the adjustor's office in Alexandria, which he did. Mr. Belgard claims it was at this point that Mrs. Collins accepted his consulting services.

MRS. COLLINS
Mrs. Collins claims that throughout her contact with Mr. Belgard she thought he was merely a contractor anxious to get the bid on her construction work. She testified that during Mr. Belgard's first visit to the store, he told her he was a commercial building contractor looking for work in the area. He mentioned nothing about consulting services. At a subsequent visit, Mr. Belgard offered to bring an engineer by her store, who was going to be inspecting another building in the area. Mrs. Collins agreed to this because there were some things she did not like about the report prepared by the insurance company's engineer.
Mrs. Collins testified that she believed she would be hiring Mr. Beard, the engineer, and when he came by the store, she had a discussion with him about his fees. Mr. Beard confirmed that they had this discussion. He also stated that he had no knowledge of any agreement between Mr. Belgard and Mrs. Collins.
In January, Mrs. Collins received a $50,000 check from Allstate, dated January 22, 1988. Although she assumed the check was an advance on her claim, when she later spoke to Mr. Beard on the telephone he recommended she get confirmation in writing from Allstate verifying that the check was not payment in full. She did so and Allstate confirmed that the check was an advance.
Mrs. Collins spoke with Mr. Beard again in February or March, 1988 in order to determine what she owed him for inspecting her store and preparing his report. Mr. Beard told her that Mr. Belgard had already paid him. When she contacted Mr. Belgard to find out what he had paid Mr. Beard, he would not tell her the amount.
Mrs. Collins remembered reviewing the package of information Mr. Belgard presented to her, however she believed this was part of his effort to obtain the construction job for her store. Mrs. Collins testified that Mr. Belgard offered to take the information to the insurance adjustor's office; she did not ask him to do it.
Allstate ultimately rejected all three of the bids that were submitted, including Mr. Belgard's. *1257 Mrs. Collins eventually settled her claim with Allstate and she received a total of $123,805 for her property damage. This amount is $73,805 above the original $50,000 check Mrs. Collins received from Allstate. Mr. Belgard claims Mrs. Collins owes him 25% of this amount pursuant to the oral contract they entered into regarding his consulting services.
After the trial on the matter, the trial court rendered judgment in favor of Mrs. Collins. It found there was no oral contract between the parties because there had never been a "meeting of the minds." It is from this judgment that Mr. Belgard appeals, asserting as error the trial court's failure to find that there was a contract between the parties.

ORAL CONTRACT
Four elements are required for a valid contract: (1) the parties must have legal capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a lawful cause or purpose; and (4) the object of the contract must be lawful, possible, and determined or determinable. La. C.C. arts. 1918, 1927, 1966, and 1971; Thebner v. Xerox Corp., 480 So.2d 454 (La.App. 3 Cir.1985), writ denied, 484 So.2d 139 (La. 1986). A party who demands performance of a contract has the burden of proving the existence of the obligation. La.C.C. art. 1831. The existence of an oral contract with a value in excess of five hundred dollars must be proved by at least one witness and other corroborating circumstances. La.C.C. art. 1846.
The trial court found there was no oral contract because Mr. Belgard and Mrs. Collins never reached a meeting of the minds. This is a finding of fact and it may not be disturbed on appeal unless it is clearly wrong. Harris v. Wallette, 538 So.2d 728 (La.App. 2 Cir.1989); see also Strecker v. Credico Financial, Inc., 444 So.2d 783 (La. App. 4 Cir.1984).
The evidence supports the conclusion that Mrs. Collins never agreed to hire Mr. Belgard to do consulting work. She believed he was a contractor bidding for the construction work on her building. This is supported by the fact that Mrs. Collins believed that she was the one hiring Mr. Beard, the engineer. If she had contracted with Mr. Belgard to do consulting work which included inspection of the building by an engineer, Mrs. Collins would not have called Mr. Beard in February or March in order to find out what she owed him. This was several weeks after Mr. Belgard had presented his package of information to Mrs. Collins; the date he claims an agreement was reached regarding his consulting services.
Thus, after a thorough review of the record, we find no clear error in the trial court's determination that there was no oral contract between Mrs. Collins and Mr. Belgard.

UNJUST ENRICHMENT
In the alternative, Mr. Belgard argues that he should be reimbursed the $1,314.20 he paid to Mr. Beard for his engineering services because Mrs. Collins would otherwise be unjustly enriched.
A party making a claim for unjust enrichment must show: (1) an enrichment; (2) an impoverishment; (3) a rational connection between the enrichment and impoverishment; (4) the lack of justification or cause for enrichment; and (5) the absence of any other legal remedy. Cahn v. Cahn, 468 So.2d 1176 (La.1985). The root principle of unjust enrichment is that the plaintiff suffered an economic detriment for which he should not be responsible, while the defendant received an economic benefit for which he has not paid. Scott v. Wesley, 589 So.2d 26 (La.App. 1 Cir.1991).
Mrs. Collins received the economic benefit of Mr. Beard's engineering services. Mrs. Collins did not pay for these services and she stated at trial she felt she owed someone for Mr. Beard's work. Because Mr. Belgard paid Mr. Beard, we find Mrs. Collins owes Mr. Belgard $1,314.20 for reimbursement of Mr. Beard's fees. We, therefore, amend the *1258 judgment of the trial court to order Mrs. Collins to pay Mr. Belgard $1,314.20 plus legal interest from date of judgment.
For the foregoing reasons, the judgment of the trial court is amended and affirmed as amended. Costs of this appeal are assessed to plaintiff, Jimmy Belgard.
AMENDED; AFFIRMED AS AMENDED.
YELVERTON, J., concurs and assigns reasons.
YELVERTON, Judge, concurring.
I agree that there was an unenforceable contract here. In my view it was unenforceable for the additional reason that Mr. Belgard, who is not a lawyer, was attempting to enforce a contract that was absolutely null, because he was engaged in the unauthorized practice of the law.
Belgard testified that he was not an attorney. He was a licensed Louisiana contractor. He operated a consulting service and charged a fee. His fee was 25% of what Mrs. Collins would receive from her insurance company over and above the insurer's first offer. Included in his services was a structural investigation of her damaged building. His engineer made this investigation. He testified that his engineer was considered an expert witness throughout the state. He went on to explain:
WeWe not only do this investigation, Mr. Beard [the engineer] acts as an expert witness if there's litigation. We do pay forfor her attorney, which she would have to, you know, she would retain the attorney and we pay for it. In fact about it, I think I informed her at one time that if she didn't have one, that we had one that she could use. But that we did pay for the attorney fees.
Later Mr. Belgard testified that he saw the $50,000 check that Allstate sent to her, and he advised her that if she signed the papers and cashed the check she would be releasing Allstate, and she would be out in the cold for anything else. He testified that when she followed his advice, he dealt with the insurer's adjusters on her behalf. He prepared a package on her behalf and delivered it to the adjusters. It was on the basis of his success in presumably getting her some $73,000 over and above the initial offer of $50,000, that he sued in this case for 25% of that difference.
La.R.S. 37:212 defines the practice of law, and R.S. 37:213 prohibits the unauthorized practice of law. In my opinion, what Mr. Belgard claimed was a contract that he entered into with Mrs. Collins and what he testified that he did for her pursuant to the contract, constituted the unauthorized practice of law. The contract was absolutely null. See Andrus v. Guillot, 160 So.2d 804 (La. App. 3d Cir.1964); Succession of Humes v. Kidd, 467 So.2d 25 (La.App. 1st Cir.), writ denied, 472 So.2d 914 (La.1985); Duncan v. Gordon, 476 So.2d 896 (La.App. 2d Cir.1985); and Dunn v. Land and Marine Properties, 609 So.2d 284 (La.App. 3d Cir.1992), writ denied, 614 So.2d 1252 (La.1993). Mr. Belgard's claim was properly rejected and his suit was properly dismissed.