# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-432

SUCCESSION OF HAL DEMPSEY GASTON

VERSUS

STEPHANIE KOONTZ

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 44630
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED IN PART AND REVERSED IN PART.**


Bradley Charles Myers
Kean, Miller, Hawthorne, et al
P. O. Box 3513
Baton Rouge, LA 70821-3513
(225) 387-0999
Counsel for Defendant/Appellant:
Stephanie Koontz

Madaline Cross Gibbs
P.O. Box 2038
Vidalia, LA 71373
(318) 336-9676
Counsel for Plaintiff/Appellee:
Christopher Robbins

**Steve Harrelson**
**Harrelson Law Firm, P.A.**
**P.O. Box 40**
**Texarkana, AR 75504**
**(870) 722-0300**
**Counsel for Defendant/Appellant:**
**Stephanie Koontz**

**GREMILLION, Judge**.

The defendant-appellant, Stephanie Koontz, appeals the judgment of the trial court in favor of the plaintiff-appellee, Succession of Hal Dempsey Gaston. For the following reasons, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Hal Dempsey Gaston died in August 2008 leaving behind a will naming his long-term partner of more than nine years, Christopher Robbins, the executor of his estate. Koontz is Gaston's sister. This dispute revolves around an oral agreement between Koontz and Gaston prior to his death. Specifically, the issue is the deceased's intentions regarding a life insurance policy valued at $210,000, which named Koontz as the primary beneficiary.

In May 2009, Robbins, as executor of the estate, filed a Petition to Enforce Contract urging that Koontz agreed to pay all debts of the succession from the proceeds of the life insurance policy, to give $10,000 cash to each of four individuals, and to give the remainder to Robbins.

Following a two-day trial in late October and early November 2009, the trial court awarded Robbins, as executor of the estate, $210,000. Out of that sum, it ordered that he pay $10,000 to each of four named individuals and all of the debts of the succession, allowing credit for any legitimate debts Koontz may have paid. The trial court further ordered that any remaining funds be paid to Robbins individually. The trial court found Koontz to be in bad faith and assessed attorney's fees against her in the amount of $17,500 and all other costs of the litigation that were not normal and customary costs associated with succession proceedings.

Koontz now appeals and assigns as error:

1

1.	The trial courts's enforcement of the alleged oral agreement because it in effect created a trust in which the form requirements were not met.

2.	The trial court's enforcement of the alleged oral agreement that modified the unambiguous notarial testament because modifications must be in testamentary form.

3.	The trial court's award of attorney's fees under La.Civ.Code art. 1997 where neither Article 1997 nor the alleged oral agreement specifically provide for the recovery of attorney's fees.

**DISCUSSION**

Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. *Jim Walter Homes, Inc. v. Jessen*, 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699. If the trial court's decision was based on its erroneous application of law, its decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983.) When an appellate court finds that a reversible error of law was made in the lower court, it must determine the facts de novo from the entire record and render a judgment on the merits. *Lasha v. Olin Corp.,* 625 So.2d 1002 (La.1983.)

The essential facts are that Gaston and Koontz orally agreed that Koontz would distribute the proceeds of the life insurance policy in accordance with Gaston's last wishes, to wit, $10,000 bequests to four nieces, payment of all succession debts, and the remainder of the funds given to Robbins. Koontz agreed to honor her brother's final wishes in exchange for some property in Concordia Parish. Although Robbins had been the beneficiary of the policy for many years, Gaston changed the beneficiary designation on August 5, 2008, shortly before his death on August 27, 2008, in an attempt to avoid Robbins having his Social Security disability benefits negatively affected by the windfall from the insurance policy. Although Koontz

2

attempted to deny this oral agreement at trial, the evidence was overwhelmingly clear that she did, indeed, agree to carry out her brother's wishes as set forth above. Koontz does not argue error in the trial court's factual findings, and we also find no error in the trial court's factual findings. Thus, we need only address the issues of law assigned as error by Koontz.

Koontz argues that, as a matter of law, there "could never be an oral agreement that creates a trust or modifies a testament." Koontz argues that the lack of any indication in the will of how the life insurance proceeds were to be distributed leads to the conclusion that the trial court sanctioned an oral will or oral modification of a testament. We disagree.

### TRUST

We note that the issue of whether the oral agreement constituted a trust is being raised for the first time on appeal. Koontz also argues that the trial court's ruling, in effect, created a trust. Although we are not required to, we will address the trust issue in part below. *See Williamson v. St. Francis Cabrini Hosp. of Alexandria,* 99-1741 (La.App. 3 Cir. 5/10/00), 763 So.2d 50, *writ denied*, 00-2149 (La. 10/6/00), 771 So.2d 83; Uniform Rules Courts of Appeal, Rule 1–3.

### ORAL CONTRACT

"A donation mortis causa is an act to take effect at the death of the donor by which he disposes of the whole or a part of his property. A donation mortis causa is revocable during the lifetime of the donor." La.Civ.Code art. 1469. "A disposition mortis causa may be made only in the form of a testament authorized by law." La.Civ.Code art. 1570. Koontz argues that the alleged oral agreement modified the terms of Gaston's notarial testament reprinted here:

3

# <u>NOTARIAL TESTAMENT</u>

August <u>01</u>, 2008

I, **HAL DEMPSEY GASTON, (SSN XXX-XX-XXXX)**, of the age of majority and a resident of and domiciled in Concordia Parish, Louisiana, presently residing at 106 Foster Drive, Ridgecrest, LA, 71334, do make and declare this to be my Last Will and Testament, revoking all others.

**<u>FIRST</u>**, I bequeath to my sister, **STEPHANIE GASTON KOONTZ**, Lot G of Adcock & Booth Subdivision of Lot 1 of Unit No. 1 of Ridgecrest Subdivision, Concordia Parish, Louisiana, being the property acquired by me from Norma K. Worthy by warranty deed recorded September 29, 2003, as Document No. 245879 in COB 403, p. 297, Records of Concordia Parish, Louisiana; together with all buildings and improvements situated thereon.

**<u>SECOND</u>**, To **CHRISTOPHER LEE ROBBINS**, my friend/partner, I bequeath my 2006 Nissan vehicle, VIN: 1N6BA07BX6N532362, together with all of my assets contained in the home at 106 Foster Drive, Ridgecrest, LA 71334; and any and all other property belonging to me, except as specifically bequeathed above, thus constituting him my universal and residuary legatee.

**<u>THIRD</u>**, Should my sister, Stephanie Gaston Koontz, predecease me, then I bequeath all of the property which I own at my death to Christopher Lee Robbins, thus constituting him as my universal, residuary legatee.

**<u>FOURTH</u>**, I name and appoint Christopher Lee Robbins as Executor of my estate, with full seizin and without bond, and specifically authorize an Independent Administration of my estate; and I further direct my Executor to arrange for my wake/viewing at Young's Funeral Home in Ferriday, Louisiana, and to arrange for my transportation to Arkansas where my family will arrange for my military funeral to be carried out in the Gaston Family Cemetery. If Mr. Robbins predeceases me or is unable to act as Executor, then, I name and appoint Stephanie Gaston Koontz as alternate Executrix, with full seizin and without bond, and specifically authorizing an Independent Administration of my estate.

**<u>FIFTH</u>**, I dispense all of my heirs or legatees from collating any gifts received from me by them, whether inter vivos or by reason of my death.

**IN WITNESS WHEREOF,** I have signed this my Last Will in the presence of the witnesses hereinafter named and undersigned on the

4

01 day of August, 2008.

/s/ Hal Dempsey Gaston
HAL DEMPSEY GASTON, TESTATOR

It is well-settled that life "insurance law is sui generis and, as such, an insurance contract is not subject to the ordinary rules which govern dispositions mortis causa." *Abney v. Continental Cas. Co.,* 401 So.2d 438, 439 (La.1981). Further, the "proceeds of life insurance form no part of decedent's estate," therefore, "the rules of the Civil Code relating to donations inter vivos or mortis causa have no application as respects life insurance policies." *Teachers' Retirement System of Louisiana v. Vial*, 304 So.2d 53, 56 (La.1974). *See also Succession of Willis*, 96-479 (La.App. 3 Cir. 11/6/96), 682 So.2d 920.

Koontz argues that the agreement *modified* the terms of the will. We disagree. Not only does the life insurance policy itself form no part of the estate, there is absolutely nothing in the oral agreement between Gaston and Koontz that modified the existing will. The will stands alone and has no relation to the life insurance policy or proceeds. The multiple cases cited by Koontz bear no relevance to the issue at hand as none relate to life insurance policies other than *Berry v. Berry,* 371 So.2d 1346 (La.App. 1 Cir. 1979), *writ denied*, 373 So.2d 511 (La.1979).

In *Berry*, the deceased attorney named his sister, the defendant, the beneficiary of his life insurance policy, instructing her to pay succession debts out of the proceeds, to care for their ailing father, to assist in providing for the education of his children, and to keep some for herself. The deceased's daughter, the plaintiff, sued to have the arrangement declared a trust in which all of the funds belonged to her and her sibling. The trial court found in the daughter's favor. The appellate court reversed, finding that neither a trust nor a stipulation pour autrui had been confected.

5

It rejected plaintiff's demands. Notably, *Berry* is distinguishable from the present matter in that the beneficiary (the sister) had substantially fulfilled her deceased brother's requests in paying off the succession debts, partially paying for her father's care, and partially paying for the education of the deceased's two children. We find *Berry* inapplicable to the case at hand.

In addition to the fact that the oral agreement did not modify the will, the oral agreement at issue is not a disposition mortis causa, as the law clearly designates life insurance policies as not forming any part of the decedent's estate and as not being subject to any rules of dispositions, even those relating to forced heirship. Nothing in the law prohibits a party from confecting an oral contract with regard to the proceeds of a life insurance policy. The fact that the legislature, in La.R.S. 22:915, has specifically delineated life insurance policies as being exempt from the civil code articles dealing with dispositions mortis causa lends credence to the fact that the strict formality requirements of La.Civ.Code art. 1469 are not applicable to life insurance policies. La.R.S. 22:915 provides:

> A. Donations inter vivos of life insurance policies, and the naming of beneficiaries therein, whether revocably or irrevocably, are not governed by the provisions of the Revised Civil Code of 1870, or any other laws of this state relative to the form of donations inter vivos.

> B. This section is remedial and retrospective. All donations inter vivos of life insurance policies made on or before July 31, 1968 are valid and effective, whether or not such donations were made in the form prescribed by the Civil Code or by any other laws of this state.

Historically, the issue of the validity and enforceability of a promise by a life insurance beneficiary to pay part or all of the proceeds to another person(s) has been litigated many times in the United States, although few have been argued recently. *See* 102 A.L.R. 588 (1935) (updated by the weekly addition of relevant new

6

cases.) The majority of these cases rely upon the creation of a "constructive trust" in favor of the third person, which is enforceable in equity. *Id.* While many other states recognize constructive trusts, Louisiana does not. *See* La.R.S 9:1721 et seq. *Id.* "A testamentary trust may be created only in one of the forms prescribed by the laws regulating donations mortis causa." La.R.S. 9:1751. "An inter vivos trust may be created only by authentic act or by act under private signature executed in the presence of two witnesses and duly acknowledged by the settlor or by the affidavit of one of the attesting witnesses." La.R.S. 9:1752. Undoubtedly, no valid trust exists under Louisiana law in this case.

The second basis for upholding the arrangement is that a contract based upon sufficient consideration has been entered into for the benefit of a third person; the third basis is that the beneficiary cannot deny the promise she has made by virtue of estoppel. 102 A.L.R. 588 (1935). Clearly, the record reveals that the trial court based its finding on the second basis, and we find no error in the trial court's finding that a valid oral contract existed between Gaston and Koontz to disburse the proceeds of the life insurance policy in the manner previously mentioned. Namely, Koontz benefitted by having three of her children receive $10,000 a piece and by receiving a piece of immovable property in Concordia Parish. Furthermore, although we need not even reach the third reason for enforcing such an agreement, there certainly exists no better factual scenario to enforce a claim of estoppel than when a sister tries to deny her brother's dying wishes in order to line her own pockets.

The party claiming the existence of a contract bears the burden of proving that the contract was perfected between himself and his opponent. *Enterprise Property Grocery, Inc. v. Selma, Inc.,* 38,747 (La.App. 2 Cir. 9/22/04), 882 So.2d

7

652, *writ denied*, 04-2640 (La.12/17/04), 888 So.2d 876. We will not disturb a trial court's factual finding that a contract existed unless it is clearly wrong. *Belgard v. Collins*, 628 So.2d 1254 (La.App. 3 Cir. 1993). Louisiana Civil Code Article 1846 requires that contracts whose price or value is in excess of $500 "must be proved by at least one witness and other corroborating circumstances." Again, as previously mentioned, we find no error in the trial court's finding that an oral contract existed between Gaston and Koontz. Multiple witnesses testified that Gaston or Koontz (or her husband) made the arrangement clear to them (including an employee of the Veteran's Administration and an employee of Young's Funeral Home ). Moreover, the extensive corroborating circumstances leave no doubt as to the validity of the arrangement Koontz confected with her brother. Accordingly, we find no error in the trial court's ruling. This assignment of error is without merit.

## ATTORNEY'S FEES

In this assignment of error, Koontz argues that attorney's fees may be recovered only when authorized by statute or contract and the trial court erred in awarding $17,500 in attorneys fees pursuant to Louisiana Civil Code Article 1997, finding Koontz to be in bad faith. We agree. Attorney's fees are not allowed except where authorized by contract or statute and none exist here. *State, Dept. of Transp. and Development v. Wagner*, 10-0050 (La. 5/28/10), 38 So.3d 240, Accordingly, we reverse that portion of the judgment awarding the succession $17,500 in attorney's fees.

## CONCLUSION

The judgment of the trial court is affirmed in all respects except for that portion pertaining to the award of $17,500 in attorneys fees. All costs of this appeal

are assessed against the defendant-appellant, Stephanie Koontz.

**AFFIRMED IN PART AND REVERSED IN PART**.